**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MICHAEL DARNELL SMITH,                    *
                                          *
Plaintiff,                                *
                                          *
v.                                        *          Civil Action  CCB-17-3232
                                          *
JOHN W. COLLIFLOWER, *et al.*,            *
                                          *
Defendants.                               *
                         * * * * * * * * * * *

<u>**MEMORANDUM OPINION AND ORDER**</u>

Michael Darnell Smith ("Plaintiff") commenced this civil action against employees of the Maryland Department of Safety and Correctional Services ("DPSCS") alleging deprivation of rights secured by the United States Constitution and claiming damages pursuant to 42 U.S.C. § 1983. By Order dated February 1, 2023, discovery disputes in this matter were referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and L.R. 301. ECF 141. Now pending is Plaintiff's motion to compel nonparty DPSCS to comply with a subpoena *duces tecum* served on September 2, 2022 (the "Motion"). ECF 140. For reasons stated herein, the Motion is GRANTED IN PART and DENIED IN PART.

## I.      FACTUAL BACKGROUND

The claims remaining in this action arise from an incident that occurred at the Maryland Correctional Institution in Hagerstown, Maryland ("MCI-H"), a DPSCS correctional facility where Plaintiff was incarcerated and defendants John Colliflower, Cole Young, and Michael Hixon (collectively, "Defendants") served as correctional officers. Plaintiff alleges that in November 2014, he attempted to submit an Administrative Remedy Procedure complaint ("ARP") to Colliflower and requested a signed copy but that Colliflower refused to sign the ARP, claiming

that he needed time to read it. Am. Compl. ¶ 21 (ECF 82-2). Plaintiff alleges that, when he read from a DPSCS Division of Corrections directive outlining the procedure for DPSCS staff to follow when accepting ARPs, Colliflower became angry, told Plaintiff to get away from him and not to bring the ARP back to him, and threatened to have Plaintiff placed in the segregation unit. *Id.*

The next day, Defendants searched a cell Plaintiff shared with another inmate. *Id.* ¶ 26. Plaintiff was present for the search but alleges that his cellmate was not present. During the search, Plaintiff alleges, Young found on the top shelf of Plaintiff's locker the ARP he had attempted to submit to Colliflower and, after all three Defendants flipped through the pages of the document, Young eventually tore up the document and flushed it down the toilet in the cell. *Id.* Plaintiff further alleges that Young collided with Plaintiff when exiting the cell. *Id.* Colliflower admits that he, Hixon, and Young searched Plaintiff's cell in November 2014 but denies that it was done in retaliation for filing ARPs. Colliflower Decl. ¶¶ 5, 7 (ECF 47-2). He claims that Plaintiff's cell was searched for a contraband cell phone, based on an anonymous tip, and denies having observed any officer destroy an ARP during the search. *Id.* ¶¶ 5, 6. Plaintiff alleges that Defendants agreed in secret to find and destroy his ARP and that the anonymous tip was a false pretext for their misconduct. Am. Compl. ¶¶ 32, 39. Plaintiff alleges that other inmates also filed complaints that Defendants "took reprisals against them for submitting complaints against them or other officers." *Id.* ¶ 147.

Plaintiff claims that the cell search caused him anxiety, panic attacks, and suicidal thoughts, and caused him to avoid contact with Defendants and to become suspicious of other correctional officers. *Id.* ¶ 45. Plaintiff submitted ARPs based upon Colliflower's alleged refusal to accept the previous ARP and Defendants' search of Plaintiff's cell and destruction of the previous ARP, *id.* ¶¶ 44, 51, and he exhausted his administrative remedies as to these complaints, ECF 107 at 27–28.

## II.    PROCEDURAL HISTORY

Plaintiff filed this civil action *pro se* in November 2017. ECF 1. Following amendment of the original Complaint and a defense motion to dismiss and for summary judgment, which was granted in part, the remaining counts in the First Amended Complaint are § 1983 First Amendment retaliation and civil conspiracy asserted against defendants Colliflower, Young, and Hixon. *See* ECF 82-2 (Am. Compl.); ECF 107 (Mem. Op.); ECF 108 (Order). Judge Catherine C. Blake granted a motion to appoint counsel to represent Plaintiff in January 2022, ECF 114, and counsel was appointed in March 2022, ECF 118.

On September 2, 2022, Plaintiff served a subpoena *duces tecum* on nonparty DPSCS requesting, *inter alia*, production of "[a]ll documents concerning any complaint, made orally or in writing by any inmate, regarding" each Defendant, without limitation as to date or DPSCS facility. ECF 140-2 at 7. In response to the subpoena, DPSCS produced "nearly 1900 pages of responsive documents," including Plaintiff's pertinent ARPs. ECF 147 at 3. However, DPSCS objected to Plaintiff's requests for complaint files as disproportionate to the needs of the case and based upon a lack of relevance, "the potential for abuse in the form of intimidating or harassing the Defendants," and the amount of work it would take to conduct "a manual search of each and every ARP filed by each and every inmate at eighteen (18) prisons" over the approximately 25-year period of Colliflower's career at DPSCS, as necessary to locate all responsive documents. ECF 140-3 at 5–8. In response to DPSCS's objections and additional information supplied by DPSCS regarding the logistical difficulties it would face locating and compiling responsive documents, Plaintiff narrowed the scope of its requests to "ARPs filed against any of the defendants from 2009 to 2015." ECF 140-6 at 2; ECF 147 at 4. In reply, DPSCS maintained its proportionality objections

to the narrowed request but offered to consider a request limited to ARPs filed at MCI-H between 2012 and 2014. ECF 140-8 at 2.

Plaintiff then filed the Motion, requesting "an order compelling DPSCS to produce all documents concerning any written complaint against Defendant Colliflower, Defendant Hixon, and Defendant Young at any time between 2009 and 2015." ECF 140 at 9. DPSCS filed a response in opposition to the Motion, ECF 147, and Plaintiff filed a reply in support of the Motion, ECF 148. A virtual hearing on the Motion was held on March 30, 2023. The Court directed that DPSCS produce supplemental information regarding the numbers of ARPs filed at MCI-H each year from 2009 through 2015 and that the parties thereafter confer regarding a potential resolution of the dispute. ECF 151. DPSCS has produced the supplemental information as directed, ECF 152, and the parties have conferred regarding a potential resolution of the dispute, ECF 153.

The Court is advised that, in an effort to reach a compromise, Plaintiff narrowed the scope of his request to complaints filed at MCI-H between 2010 and 2014. *Id.* DPSCS offered to produce "ARPs filed from 2012 through the first 90 days of 2015, or, alternatively, from the last 90 days of 2011 to 2014." *Id.* However, the parties did not reach an agreement as to the temporal scope of Plaintiff's request and now require a decision on the pending Motion. *Id.* The Motion is now revised to request an order compelling DPSCS to produce documents concerning any written complaint filed at MCI-H against any of the three defendants between 2010 and 2014. *Id.*

## III.    LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance

4

of the discovery in resolving the issues, and whether the burden or
expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Importantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* It remains the case, however, that "all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D. Md. 2010). "[T]he court must limit the frequency or extent of discovery" otherwise permitted if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i). The court may restrict discovery to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c).

While subject to the general discovery provisions of Fed. R. Civ. P. 26, subpoenas *duces tecum* issued in discovery to nonparties are governed by Fed. R. Civ. P. 45. A party "responsible for issuing and serving a subpoena" on a nonparty has a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena[,]" and the court "must enforce this duty[.]" Fed. R. Civ. P. 45(d)(1). When a nonparty receives a subpoena to which it objects, it may serve its objections in writing and oppose any motion to compel compliance with the subpoena pursuant to Fed. R. Civ. P. 45(d)(2)(B), file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(d)(3), or move for a protective order pursuant to Fed. R. Civ. P. 26(c). *See also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."); Fed. R. Civ. P. 37(a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."). In deciding whether to enforce a subpoena, a court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the

[person] subject to the subpoena[.]" *Bartch v. Barch*, Civ. No. 19-2842-RDB, 2020 WL 204921, at *2 (D. Md. Jan. 14, 2020), *report and recommendation adopted*, 2020 WL 9739339 (D. Md. Jan. 29, 2020) (quoting *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)); *see also Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005).

A district court is afforded "substantial discretion" in the management of discovery and in denying or granting of motions to compel discovery. *Brooks v. Johnson*, 924 F.3d 104, 121 (4th Cir. 2019) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

## IV.    DISCUSSION

The requests for documents in the subpoena *duces tecum* at issue here call for DPSCS to produce "[a]ll documents concerning any complaint, made orally or in writing by any inmate, regarding" each of the three defendant correctional officers. ECF 140-2 at 7. Plaintiff has since narrowed his requests to all documents concerning any written complaint against each Defendant filed at MCI-H at any time between 2010 and 2014. ECF 153.

### A. Relevance of Complaints Against Defendants

The requested documents are relevant to Plaintiff's claims and potential defenses available to Defendants. Plaintiff's claims are founded upon his allegations that Defendants, in retaliation for seeking proper submission of an ARP, conducted a search of his prison cell in November 2014 and destroyed an ARP he completed and sought to file, and that Defendants conspired to engage in this retaliatory conduct. Am. Compl. ¶¶ 21–39. Plaintiff also alleges that other inmates filed complaints of retaliation by Defendants "for submitting complaints against them or other officers." *Id.* ¶ 147. Written complaints against Defendants by other inmates alleging similar official misconduct would tend to make more probable a retaliatory motive for the November 2014 cell

search and conspiracy among Defendants. Additionally, Colliflower denies a retaliatory motive for the cell search, denies having observed any officer destroy an ARP during the search, and claims that the search was conducted to investigate an anonymous tip that Plaintiff possessed a contraband cell phone. Colliflower Decl. ¶¶ 5–7. Plaintiff asserts that the anonymous tip was a false pretext for retaliation. Am. Compl. ¶ 32. Defendants' credibility as to the reason for the November 2014 cell search is at issue, and written complaints against Defendants may undermine their credibility on this matter.[1]

The relevance of the documents Plaintiff seeks from DPSCS does not, by itself, answer the question of whether the documents are discoverable. The documents are subject to discovery only if "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The Court finds that Plaintiff's request for five years' worth of documents concerning written complaints against each of the three defendant correctional officers is not proportional to the needs of his case, especially considering the burden searching for and producing of these documents would place upon DPSCS.

### B.  Burden on DPSCS

The time and effort that Plaintiff's requests would require of DPSCS are detailed in the Affidavit of Lieutenant Joshua Castle attached to DPSCS's opposition. Castle Aff. (ECF 147-2). Lt. Castle is employed by DPSCS as the ARP Coordinator for MCI-H. *Id.* ¶ 1. He affirms that responsive ARP records for the period of 2009 to 2015 are kept in paper form and that each complaint file may range from a single page to over 100 pages, as it may include attachments,

---

[1] Courts in similar civil rights cases had no trouble finding complaints and grievances against defendant government officers alleging similar violations within the broad scope of relevance for purposes of discovery. *See Martin v. Conner*, 287 F.R.D. 348, 352 (D. Md. 2012); *Roland v. Hill*, No. 17-cv-6524, 2019 WL 1128842, at *2 (W.D.N.Y. Mar. 12, 2019); *Eusse v. Vitela*, No. 3:13-cv-916, 2015 WL 9008634, at *4 (S.D. Cal. Dec. 14, 2015); *Douty v. Rubenstein*, Civ. No. 2:13-32832, 2015 WL 4163093, at *5 (S.D.W.Va. July 9, 2015); *Lamon v. Adams*, No. 1:09-cv-205, 2010 WL 4513405, at *2 (E.D. Cal. Nov. 2, 2010).

resubmissions, and appeals. *Id.* ¶¶ 5, 8. "The initial complaints and appeals are handwritten on carbon paper forms, and as such may be difficult to readily comprehend." *Id.* ¶ 8. Lt. Castle maintains an electronic spreadsheet that indexes the ARPs by date, complaining inmate, and general description, but the ARPs are not indexed in a way to identify any individual staff member who may be a subject of a complaint. *Id.* ¶¶ 6, 9. Therefore, all ARPs described as a "staff complaint" and dated between 2010 and 2014 would need to be searched manually and examined individually to determine whether it concerns any of the three Defendants. *Id.* ¶ 9.

Lt. Castle estimates that it would take, on average, between three and five minutes to review each ARP to determine whether the complaint concerns any of the Defendants but that his electronic index may reduce the total amount of time necessary for manual review by 20 percent. Castle Aff. ¶¶ 11, 12. As ARP Coordinator with a number of essential duties, Lt. Castle estimates that he could dedicate, on average, five hours of his eight-hour work day to locating responsive documents among the MCI-H complaint files. *Id.* ¶¶ 12, 13. It is unclear whether delegating the task to another DPSCS staff member would be feasible. *Id.* ¶¶ 14. According to DPSCS, 954 ARPs were filed at MCI-H in 2010, 804 were filed in 2011, 834 were filed in 2012, 1,043 were filed in 2013, and 947 were filed in 2014, totaling 4,582 ARPs filed at MCI-H between 2010 and 2014. ECF 152; ECF 153. Taking the 4,582 number of complaint files and applying Lt. Castle's estimated three-to-five minutes necessary to conduct a manual review of each complaint file, and assuming 20% reduction in the total amount of time achieved through use of the electronic index, results in an estimated range of 183.3 to 305.5 staff hours necessary to conduct the review. If reviewing the ARPs cannot be delegated to another DPSCS staff member, it would take Lt. Castle between approximately 37 and 61 work days (seven to twelve work weeks) to complete the task, excluding overtime.

### C.  Proportionality of Plaintiff's Requests

The Court finds Plaintiff's requests for five years of inmate complaint files unreasonably cumulative and not proportional to his needs. This case concerns conduct of Defendants that occurred on no more than two consecutive days in November 2014 and emotional injuries that allegedly resulted from that conduct. The conduct at issue includes Colliflower's alleged refusal to accept an ARP from Plaintiff, an alleged conspiracy between Defendants to search Plaintiff's cell for the ARP and destroy it, the subsequent cell search, and the alleged destruction of the ARP. Although complaint files reflecting allegations of any similar misconduct by Defendants may prove important to developing evidence in support of Plaintiff's claims, it is unlikely that any greater benefit five years of such complaints would hold for Plaintiff over three or four years of such complaints would be anything more than cumulative. The complaint files most likely to yield information of greater evidentiary value to Plaintiff are those closer in time to the incidents at issue in this case, in late 2014. The further back in time Plaintiff's request extends, the less likely it is to capture material relevant to Plaintiff's claims while, at the same time, it increases the burden on DPSCS to compile responsive records.

The substantially greater burden that would be imposed upon DPSCS if it were required to review a full five years of records instead of a narrower time frame outweighs the merely cumulative benefit this volume of records would hold for Plaintiff's case. Compiling responsive records from 2010 through 2014 would require DPSCS to review up to 4,582 complaint files, a task that may take DPSCS 183.3 to 305.5 staff hours to complete. Narrowing the period to the second half of 2011 through 2014 (a period of three-and-one-half years instead of five) could reduce the number of complaint files to be reviewed by approximately 1,356 and reduce the

amount of time necessary to compile responsive documents by approximately 30%, down to about 128 to 214 staff hours.[2]

Confining Plaintiff's request for complaint files to this three-and-one-half-year period would be more proportional to the needs of his case than the five-year period he seeks, while relieving DPSCS of unnecessary hardship in the compilation and production of responsive records.[3] Therefore, the Court will compel DPSCS to produce inmate complaint files responsive to Plaintiff's request but only those files associated with ARPs dated from July 2011 through December 2014.

Plaintiff cites several cases from other courts for the general proposition that a party may not "shirk its discovery obligations" by claiming undue burden based upon having maintained its records in an inefficient or inaccessible manner that makes discovery "an arduous task." ECF 148 at 1–3 (quoting *Columbian Chemicals Co. v. AIG Specialty Ins. Co.*, No. 5:14-CV-166, 2015 WL 12755711 (N.D. W.Va. Sept. 18, 2015)); *see also Trask v. Olin Corp.*, 298 F.R.D. 244, 267 (W.D. Pa. 2014); *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 61 (D. Mass. 2005). The Court agrees that DPSCS cannot avoid discovery based on hardships created by its choice to keep its inmate complaint records in a manner that makes searching and compiling responsive records difficult and time-consuming when better record-keeping options are available. Still, the Court cannot ignore the practical difficulties DPSCS would face if compelled to produce a broader scope

---

[2] Between 2012 and 2014, 2,824 ARPs were filed at MCI-H, according to DPSCS. ECF 152. In 2011, 804 ARPs were filed. Adding half the 2011 figure, 402, to 2,824 results in a total estimated number of 3,226 ARPs filed between the second half of 2011 through 2014, which is 1,356 less ARPs than the 4,582 filed between 2010 and 2014 and amounts to a 30% reduction. Applying that 30% reduction to the estimated range of 183.3 to 305.5 staff hours needed to review 4,582 ARPs results in a range of 128 to 214 staff hours to review an estimated 3,226 ARPs.

[3] The Court notes that, in seeking a compromise to revolve its dispute with Plaintiff, DPSCS offered to produce MCI-H complaint files for a slightly narrower time frame—from 2012 through 2014 plus 90 days from either 2011 or 2015. ECF 153.

of records than necessary to serve the needs of Plaintiff's case. While poor record-keeping cannot excuse DPSCS from Plaintiff's legitimate needs in discovery, any deficiencies in DPSCS's practices do not justify an overexpansive request by Plaintiff for an unreasonably cumulative volume of records he does not need to support his claims.

## V.   ORDER

For the reasons stated herein, Plaintiff's Motion to Compel Non-Party Maryland Department of Public Safety and Correctional Services to Comply with Subpoena *Duces Tecum* (ECF 140) is GRANTED IN PART and DENIED IN PART.

It is hereby ORDERED that within forty-five (45) days of the date of this Order, subject to extension for good cause, DPSCS shall produce all documents concerning any written complaint (Administrative Remedy Procedure) filed regarding defendants John Colliflower, Michael Hixon, and Cole Young at the Maryland Correctional Institution in Hagerstown, Maryland between July 2011 and December 2014.


April 28, 2023                      ___/S/_____
Date                              Matthew J. Maddox
                                      United States Magistrate Judge